GEOFFREY M. BELLMER, a Minor, by Amy Bellmer, his Mother and Next Friend, *et al.*, Plaintiffs-Appellants, *v.* CHARTER SECURITY LIFE INSURANCE COMPANY *et al.*, Defendants-Appellees.

Fourth District    No. 17325

Opinion filed March 30, 1982.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellants.

Gillespie, Cadigan & Gillespie and Heyl, Royster, Voelker & Allen, both of Springfield (Gary M. Peplow and David L. Requa, of counsel), for appellees.

JUSTICE TRAPP delivered the opinion of the court:

This is an appeal by plaintiffs, Geoffrey Bellmer and Amy Bellmer, his mother, from an order of the circuit court of Sangamon County granting defendant Oscar McNear's motion pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45) to dismiss, with prejudice, count II of plaintiff's complaint, and finding no just reason for delay of an appeal. See Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).

This action was commenced by plaintiffs against Charter Security Life Insurance Co. (count I) and Oscar McNear, Sr., agent of defendant Charter Security Life Insurance (count II), seeking recovery of damages for failing to notify plaintiff Amy Bellmer, the owner of a life insurance and annuity policy, of the default of her ex-husband (insured) in making premium payments under the policies and their subsequent lapse. The circuit court granted defendant Oscar McNear's motion to dismiss count II for failing to state a cause of action, and it is from this order that plaintiffs appeal.

■■ In determining whether count II states a cause of action, it is well settled that a motion to dismiss admits all well pleaded facts and inferences therefrom (*Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 345 N.E.2d 503), and that the granting of such a motion can be sustained only if no set of facts would support a cause of action. (*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206.) We conclude that the trial court acted properly in dismissing count II of plaintiffs' complaint.

In count II of plaintiffs' amended complaint, plaintiffs allege that Louisiana & Southern Life Insurance Co., the predecessor corporation of Charter Security Life Insurance Co., issued through its agent, Oscar McNear, Sr., a $100,000 life insurance policy and a $100,000 retirement annuity policy to James M. Bellmer on March 9, 1976. The owner of both policies was listed as plaintiff Amy Bellmer. On March 9, 1977, plaintiff Amy Bellmer and James Bellmer obtained a decree of divorce in the circuit court of Sangamon County which provided that James Bellmer was to maintain a life insurance policy on his life for $100,000 with the parties' minor child, Geoffrey Bellmer, named as beneficiary. It was further alleged that defendant McNear was aware of the divorce decree provision requiring James Bellmer to maintain a policy for the minor's benefit and of the fact that plaintiff was no longer residing with her ex-husband.

On October 12, 1978, James Bellmer failed to pay the premiums on either policy and also later failed to make payment during the 45-day

grace period provided in the policy. Plaintiffs alleged that defendant McNear was aware of the provisions of the divorce decree requiring the insured to change the beneficiary of the policy to the minor, Geoffrey Bellmer, and of the failure of the insured to pay the premiums during the 45-day grace period and that notwithstanding such awareness, McNear failed to provide the beneficiary forms or notify plaintiff Amy Bellmer of James Bellmer's default.

On January 29, 1979, the Charter Security Life Insurance Co., returned a premium check to James Bellmer dated December 31, 1978, in the amount of $299.01 and advised him that payment was made beyond the grace period and could not be applied toward his life insurance policy. The letter further advised Mr. Bellmer of what amounts were owing and what steps were necessary to reinstate the insurance policy. (The annuity premium had been paid by virtue of an automatic loan provision in that policy.) Plaintiffs alleged that both Charter Security and McNear's failure to advise plaintiff Amy Bellmer of the letter was a breach of the duty owed her and that both defendants had breached a duty owed her in failing to provide reinstatement forms, and to advise her of the right to exchange the annuity for other paid up life insurance policies. On July 14, 1979, James Bellmer was killed in an automobile accident and as a result of the breaches of the foregoing duties plaintiffs alleged they were damaged in the sum of $200,000.

The controlling question we must decide in passing upon plaintiffs' complaint is whether defendant Oscar McNear, Sr., as agent of Charter Security Life Insurance Co., had a duty to advise Amy Bellmer of her ex-husband's default in premium payments and the subsequent termination of the policy or otherwise advise her of her right to reinstate the insurance policy or exchange the annuity policy for other paid up life insurance policies. Plaintiffs, citing *Talbot v. Country Life Insurance Co.* (1973), 8 Ill. App. 3d 1062, 291 N.E.2d 830, and *Omni Overseas Freighting Co. v. Cardell Insurance Agency* (1979), 78 Ill. App. 3d 639, 397 N.E.2d 112, argue that the defendant had such a duty in the case at bar.

In Talbot, a suit was filed againt an insurance company and its agent for unreasonable delay in acting on a life insurance application submitted September 13, 1969, and rejected February 21, 1970, two days after the proposed insured's death. There, the court held that both the insurance company and its agent could be held liable in tort for failing to act promptly on the application. In discussing the duties of the insurance agent, the court concluded that one who enters into an undertaking to perform a service for another is required to exercise reasonable care to avoid injury to the beneficiary of the undertaking. Though the court noted that the agent was primarily answerable to the demands of the insurance company, a duty of reasonable care would still be imposed

when an undertaking was agreed to and acted upon by the agent on behalf of the proposed insured.

In *Omni*, the plaintiff, an international cargo company, hired the defendant insurance broker to procure insurance coverage for possible damage to cargo while in plaintiff's possession. The broker obtained one policy which was subsequently discovered to be insufficient and was canceled. Later, another policy was issued which purportedly provided the requested coverage but this policy was also canceled by the insurer effective on its date of issuance. The insurance broker failed to notify plaintiff of the policy's cancellation and no further efforts were undertaken to produce the desired coverage. As a result, a subsequent loss was not insured. In ruling on the merits of plaintiff's complaint against the defendant broker, the court held that the broker's failure to notify plaintiff of the cancellation of the insurance policy was a breach of the broker's duty to exercise competence and skill in his dealings with the plaintiff. The court stated:

"Raguso [the broker] breached his obligation to exercise competence and skill in his dealings with the plaintiff in failing to communicate the fact of the cancellation of the inland transit policy to the plaintiff while he knew or should have known that the plaintiff believed he had appropriate liability coverage." 78 Ill. App. 3d 639, 643, 397 N.E.2d 112, 116.

Two other cases dealing with the liability of an insurance broker for failing to notify an insured of the cancellation of an insurance policy, though not arising in the courts of this State, are *Foster v. Nunmaker Discount Co.* (La. App. 1967), 201 So.2d 215, and *Adkins & Ainley, Inc. v. Busada* (D. C. App. 1970), 270 A.2d 135. In *Foster*, the plaintiff had obtained an insurance policy through its broker, Carver General, underwritten by Marquette Casualty, on an auto which was subsequently destroyed by fire. The policy had been canceled by Marquette prior to the loss, but the broker failed to relay this information to the plaintiff. Plaintiff sued the broker and recovered a judgment in his favor. On appeal the judgment was affirmed, the court stating:

"We must now decide just what duty the Carver Agency had toward the Plaintiff. To do this we must first determine the relationship between the parties. From the record it is obvious that the Carver Agency was an insurance 'broker' rather than an exclusive agent for Marquette Casualty Co.
* * *

We conclude that the Carver General Insurance Agency was an agent of the Plaintiff and owed him a duty to inform him that the contract of insurance had been cancelled failing in which it * * * is liable for the resulting damages." 201 So.2d 215, 217.

In *Adkins*, the insured had been informed that a policy insuring certain real property had been canceled and contacted the defendant, an insurance broker, to reinstate the policies. The defendant agreed to do so but never contracted for the requested coverage. The defendant had contacted a separate insurance broker of plaintiff and informed him that the policy had terminated and was no longer in force and contended that this notice to the separate broker was effective notice to the principal of the separate broker, plaintiff. The court rejected this argument, however, and held the defendant liable for failing to reinstate the policies, since the other broker was justified in believing that the underwriter of the policy would inform the plaintiff directly of the policy's termination. The court there stated:

> "It is true that * * * [with respect to the separate broker, he] has a duty to inform the insured of cancellation, however, he is legally relieved of that duty if it can be shown that the insured knew or should have known of the cancellation from other sources." 270 A.2d 135, 137.

As the above cases indicate, a duty is imposed upon an insurance *broker* to exercise reasonable skill and ordinary diligence as may fairly be expected from a person in his profession or situation in doing what is necessary to procure a policy and ensuring that it covers the property to be insured. This duty, however, is imposed by all authorities except *Talbot* upon the insurance broker, rather than upon the agent acting solely in behalf of the insurer. In *Omni*, as well as *Foster* and *Adkins*, in which liability was imposed on the insurance broker, all involved the rights and duties between an insured and his insurance agent. Absent an agency relationship between the insured and the insurance agent, no duty is imposed upon the insurer's agent to notify plaintiff of facts detrimental to the insured for the breach of which negligence liability will lie. Supportive of this position is *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.* (1963), 46 Ill. App. 2d 131, 195 N.E.2d 32.

In *Gieseke*, plaintiff, administrator of decedent's estate, brought an action against both an insurer and its agent for the agent's failure to include in an automobile policy an accidental death benefit provision. The evidence adduced by plaintiff supported his claim that the agent had been directed to include such a provision in the auto policy, but on appeal from a judgment in plaintiff's favor the court reversed the judgment against the agent, holding that the agent did not bind himself personally and was not liable in his capacity as the insurer's agent. The court stated:

> "Counsel for appellee cite several cases dealing with the liability of an insurance broker for failure to obtain an insurance policy. These cases are not persuasive here since plaintiff pleaded and proved that [the agent] was the agent of Hardware Dealers Mutual

Fire Insurance Company and he had no other role or relationship in the issuance of an insurance policy. In the complaint, Mr. Wallensack is not mentioned, except as the agent of Hardware Dealers Mutual Insurance Company." 46 Ill. App. 2d 131, 140-41, 195 N.E.2d 32, 37.

■■ This distinction for purposes of tort liability arises from the different relationships the parties have toward another and the consequent rights and duties flowing therefrom. Whereas the insured's agent or broker has a duty of care, competence, and skill in performing all aspects of the insurance transaction, no such duty is imposed upon the insurer's agent regarding its duties toward a customer of the insurer. Under section 490 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1065.37) an insurance agent is defined as:

> " 'Insurance Agent' means an individual, firm, partnership, association or corporation *appointed by an insurer to solicit, negotiate or bind coverages for or on applications or policies of insurance on its behalf*, covering property or risks located in this State." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 73, par. 1065.37(a).

In *Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206, several plaintiffs brought suit against two automobile retailers for failing to disclose to plaintiffs the fact that cheaper credit life and disability insurance was available upon the finance of a used car than was purchased by them. On appeal from the trial court's order dismissing this count of plaintiff's complaint, the appellate court reversed, holding that the issue of whether the car dealers were agents of the insurer or the insured presented a question of fact not to be determined at the pleading stage. The court stated:

> "Should the facts prove [the auto dealers] to be agents of the insureds, they would be governed by the principles of agency law [citation] in which the relationship between principal and agent is fiduciary in character. [Citation.] In all transactions affecting the subject of the agency the law dictates that an agent must act in utmost good faith and must make known to his principal all material facts within his knowledge which may in any way affect the transaction and the subject matter of his agency. [Citation.]" 62 Ill. App. 3d 623, 630, 379 N.E.2d 1206, 1211.

■■ Plaintiff's complaint alleges that Oscar McNear, Sr., was the agent of the defendant insurance company, and nowhere was there an allegation that McNear agreed to act on behalf of the plaintiffs as their agent in the insurance transactions. Thus, the duty which plaintiffs allege was owed by the defendant McNear is neither supported by case law, nor are such duties found in the parties' contract of insurance contained in the record before us. Accordingly, we conclude that defendant Oscar McNear, Sr.,

had no duty to plaintiffs to inform them of James Bellmer's default, the termination of the policy, their options under the annuity policy, or to take any other actions with respect to plaintiffs' rights and duties under either policy.

Plaintiffs also argue, however, that when an agent takes an affirmative role in violating a duty owed by a disclosed principal, such agent may also be held personally liable, relying on *Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 394 N.E.2d 1273, and *Landau v. Landau* (1951), 409 Ill. 556, 101 N.E.2d 103. Specifically, the plaintiffs alleged that the insurance company had a duty to remit to the plaintiffs the forms necessary to effectuate a change of beneficiary, to notify plaintiff Amy Bellmer of the nonpayment of premiums by James Bellmer and of her ability to reinstate the policies, and to notify plaintiff of her rights under the annuity policy.

■■ Apart from the scope of the insurance company's duties to plaintiffs, which are not issues before us respecting count II, we conclude that McNear took no active part in violating the alleged duties owed by the insurance companies. Nowhere in plaintiffs' complaint is allegation made that McNear was aware of a breach of duty by defendant Charter Security Life Insurance Co., and no allegation is made of an act McNear took in violating the principal's duties. Even if the rule regarding the agent's liability for active violations of a principal's duties would extend to failing to act, we do not believe liability could be imposed when the agent is not only unaware of the principal's breach but also takes no action respecting any alleged duty.

Finally, plaintiffs argue that the allegations of the complaint stated a cause of action against defendant Oscar McNear for intentional or reckless infliction of extreme emotional distress. Plaintiffs argue that defendant's failure to provide plaintiffs with change of beneficiary forms and to notify Amy Bellmer of James Bellmer's nonpayment of the life insurance premiums when due and during the 45-day grace period caused plaintiff Amy Bellmer extreme and severe emotional distress in her concern for providing the necessary financial support for the minor child, Geoffrey Bellmer.

The tort of intentional infliction of extreme emotional distress was recognized by the Illinois Supreme Court in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. In *Knierim*, the court held the plaintiff's complaint, alleging that defendant had told plaintiff he would kill plaintiff's husband and subsequently carried the threat out, resulting in great emotional anguish to plaintiff, stated a cause of action for intentional infliction of extreme emotional distress. The elements of the tort which have been substantially adopted from the Restatement (Second) of Torts, §46 (1965) are: (a) extreme and outrageous conduct; (b) intentionally or recklessly

done; and (c) with resulting severe emotional distress. See *Public Finance Corporation v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765; Restatement (Second) of Torts §46 (1965); *McCaskill v. Barr* (1980), 92 Ill. App. 3d 157, 414 N.E.2d 1327.

■■ In the case at bar, however, no conduct of the defendant is alleged to support the tort. While failing to act may form the basis for liability for intentional or reckless infliction of emotional distress (see *Eckenrode v. Life of America Insurance Co.* (7th Cir. 1972), 470 F.2d 1; *Frishett v. State Farm Mutual Automobile Insurance Co.* (1966), 3 Mich. App. 688, 143 N.W.2d 612), we reject plaintiffs' argument that the agent's failure to act was outrageous. As we have previously indicated, the agent's conduct was proper and did not give rise to a cause of action in common law tort liability for negligence. Holding such, it would be entirely inconsistent and unwarranted to say that conduct could be outrageous. We reject plaintiffs' argument that the complaint was sufficient to state a cause of action for intentional or reckless infliction of emotional distress.

Accordingly, the order of the trial court dismissing count II of plaintiffs' complaint for failure to state a cause of action is affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.