MARILYN LEAVITT, Special Adm'r of the Estate of Burton Schwartz, Deceased, Plaintiff-Appellant, v. FARWELL TOWER LIMITED PARTNERSHIP *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—1582

Opinion filed June 21, 1993.—Rehearing denied September 14, 1993.

Jeffrey M. Goldberg & Associates, Ltd., of Chicago (Jeffrey M. Goldberg and Stephen D. Blandin, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe, Lynn D. Dowd, and Patricia J. Hogan, of counsel), for appellee Gallaher & Speck.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Perry W. Hoag, and Lloyd E. Williams, Jr., of counsel), for other appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Marilyn Leavitt, special administrator of the estate of Burton Schwartz, appeals an order of the circuit court of Cook County granting summary judgment to defendants Farwell Tower Limited Partnership (Farwell), David E. Friedman, William F. Fallmer, Barbara Fallmer (the Farwell defendants) and Gallaher & Speck. For the following reasons, we affirm.

The record on appeal indicates the following facts. Plaintiff filed a wrongful death action against the defendants named above. Plaintiff alleged that her cousin, Burton Schwartz, was a tenant who resided in apartment 312 of a building located at 2115 West Farwell in Chicago, Illinois. It is alleged that Farwell, Friedman, and the Fallmers were the owners or had legal interests in this building. Gallaher & Speck allegedly contracted with the owners of the building for the maintenance and repair of the building's elevator. Plaintiff claimed that the owners were negligent in maintaining and repairing the elevator. Plaintiff claimed that Gallaher & Speck was similarly negligent and also negligent in specific technical areas that are discussed below, where necessary. Plaintiff claims that defendants' negligence caused Schwartz's death.

Defendants eventually moved for summary judgment; a number of depositions were taken relating to these motions. These depositions indicate that on September 9, 1987, Schwartz was found dead in the sole elevator shaft of the building at 2115 West Farwell. The building is five stories tall.

Ann Abrams, another tenant of the building, stated in her deposition that on the date at issue, she saw Schwartz in the front vestibule of the building at approximately 11 a.m. According to Abrams, Schwartz had a license plate and was exiting the building to put the

plate on his car. Schwartz was wearing a white tee shirt and shorts or slacks. Abrams went up to her apartment on the second floor. At approximately 11:10 a.m., Abrams answered a knock at her door from her neighbor, Joyce Rosee. The two women went out into the hallway. Abrams observed that the elevator hoistway doors were open. When Abrams looked upward, she could see the bottom of the elevator cab about six inches above the top of the hoistway. Abrams ran scotch tape across the doorway. Abrams then noticed a package of mail addressed to Schwartz on the floor near the elevator door. Abrams called the building office and spoke with the maintenance man, who arrived shortly thereafter.

Joyce Rosee's deposition corroborated much of Abrams' deposition. However, according to Rosee, she first discovered the open elevator door after finishing lunch at approximately 12:15 p.m. Rosee looked into the dark shaft and then knocked on Abrams' door.

Donald Hurley, an elevator repairman from Gallaher & Speck, stated in his deposition that on the date in question, he arrived at the building to repair leaky packing in the elevator pit. When he arrived, Hurley noticed an "Elevator Out of Order" sign on the first-floor elevator door. Hurley opened the door with the required special key or tool. Hurley saw the elevator cab stopped between the second and third floors. Hurley then saw Schwartz's body in the pit of the elevator. Hurley indicated that the bottom of the pit of the elevator shaft is roughly four feet from the first-floor landing. The body was wrapped around a spring; the travelling power cable had been pulled from underneath the elevator cab and was entangled around the body. The body was clad in pajamas. Hurley inspected the elevator on September 10, 1987, accompanied by Henry King.

Henry King, a 50% owner of Gallaher & Speck, stated in his deposition that he had experience as an elevator mechanic. Both Hurley and King indicated in their depositions that the elevator cab was stuck due to a physical obstruction between the vanes in the hoistway and the cam that sat on top of the elevator cab. King indicated that on September 9, 1987, none of the hoistway doors had spirators, which are automatic door closure devices. King indicated he had not recommended installing spirators prior to that date. According to King, the City of Chicago later required the installation of spirators.

Plaintiff also submitted the affidavit of elevator mechanic Russell G. Kramer. The affidavit indicated that from 1983 to 1988, it was the custom and practice of elevator repair and maintenance personnel to install or recommend the installation of spirators for elevators that did not have automatic door closure devices. The affidavit indicated

the failure to install or recommend installation of spirators was a deviation from safe practice.

On February 26, 1991, following a hearing, the trial court granted summary judgment in favor of all defendants except Gallaher & Speck. Plaintiff filed a motion to reconsider this ruling. On April 23, 1991, the trial court denied plaintiff's motion to reconsider and also granted summary judgment in favor of Gallaher & Speck. Plaintiff now appeals.

## I

Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.) If the papers submitted would constitute all the evidence before a court and would require the court to direct a verdict, summary judgment should be entered. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308.) Thus, summary judgment should be entered for defendants where all the evidence, when viewed most favorably toward plaintiff, so overwhelmingly favors defendants that no contrary verdict could ever stand. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Absent an abuse of discretion by the trial court, summary judgment will not be reversed. *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 475 N.E.2d 549.

## II

Plaintiff brings her claim under the Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, par. 1 *et seq.*) (Act). In order to maintain a claim under the Act, plaintiff must demonstrate: (1) defendant owed a duty to decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused decedent's death; and pecuniary damages arising therefrom to persons designated under the Act. (See *Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62, 65, 509 N.E.2d 692, 695.) If plaintiff fails to establish one of these elements from the papers on file, summary judgment for defendants is proper. (See *Pyne*, 129 Ill. 2d at 358, 543 N.E.2d at 1307.) The questions raised on appeal relate to elements of duty and causation. We address each question in turn.

## A

■ Defendants claim that plaintiff failed to show that they owed a duty to decedent. Plaintiff argues that defendants have waived the argument because they failed to raise it below. Although the trial court granted defendants' motions on the proximate cause issue, the record indicates that the issue of duty was raised in the memoranda submitted in support of and in opposition to summary judgment. This court may affirm summary judgment for any reason that properly appears in the record, regardless of whether that reason is the reason relied upon by the trial court. (*Coleman v. Windy City Balloon Port, Ltd.* (1987), 160 Ill. App. 3d 408, 418, 513 N.E.2d 506, 513.) Consequently, this court may consider the issue on appeal.

Gallaher & Speck, which maintained the elevator at issue, was legally required to exercise that degree of care that an ordinarily prudent elevator maintenance business would exercise under the same or similar circumstances. (*Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 41, 382 N.E.2d 232, 236.) For example, Gallaher & Speck may be charged with the duty to take reasonable steps to discover problems with an elevator and the duty to take reasonable steps to correct any problem so discovered. See *Davlan v. Otis Elevator Co.* (7th Cir. 1987), 816 F.2d 287, 291.

■ Gallaher & Speck argues that none of the prior problems with the elevator at issue involved the door closure devices and therefore Gallaher & Speck had no prior knowledge of any problem with the door closure devices. However, plaintiff introduced the affidavit of an elevator mechanic that it was the custom and practice of elevator maintenance personnel to install or recommend the installation of spirators and that failure to do so was a deviation from accepted safe practice. The record indicates that Gallaher & Speck did not recommend the installation of spirators before the events at issue here occurred. Thus, plaintiff raised a question of material fact as to whether Gallaher & Speck breached a duty to decedent to recommend or install spirators in this case.

■ There is a question as to which standard of care is applicable to the Farwell defendants. Plaintiff contends that the Farwell defendants, as owner-operators of the building and its elevator, are viewed as common carriers and have a nondelegable duty to exercise the highest degree of care to the elevator passengers. (See *Jardine*, 73 Ill. 2d at 41, 382 N.E.2d at 236.) The Farwell defendants argued in the trial court that decedent was not a passenger of the elevator, given the nature of the death. This argument is supported by this

court's decision in *Kaminsky v. Arthur Rubloff & Co.* (1966), 72 Ill. App. 2d 68, 79-80, 218 N.E.2d 860, 865. Nevertheless, the Farwell defendants, as landlords of the building, owe a duty to tenants such as decedent to exercise reasonable care in maintaining common areas controlled by the landlord. *E.g., Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 485, 448 N.E.2d 1042, 1045.

The Farwell defendants contend that plaintiff's expert's affidavit indicated that from 1982 to 1988, the Chicago Building Code adopted a requirement from the National Elevator Code of the American National Standards Institute (ANSI) that landing door closure devices be installed, but omitted any reference to a "grandfather clause" in the Chicago Building Code that exempted the elevator at issue from the door closure device regulation.

█ Violation of an ordinance or regulation designed to protect the public may be *prima facie* evidence of negligence. (*E.g., Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 209, 462 N.E.2d 753, 756.) However, this court has indicated that the existence of a grandfather clause in a building code supports the dismissal of a negligence suit based on violation of that code. See *Beese v. National Bank* (1980), 82 Ill. App. 3d 932, 933-34, 403 N.E.2d 595, 596.

█ Plaintiff notes, however, that she need not use the Chicago Building Code itself to establish defendants' duty. Regardless of the extent of their incorporation into the Chicago Building Code, if relevant, the ANSI standards could be used as evidence of the custom or practice within an industry. (See *Ruffiner v. Material Service Corp.* (1987), 116 Ill. 2d 53, 58, 506 N.E.2d 581, 584; *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 125, 273 N.E.2d 809, 812-13.) It thus appears that plaintiff raised a question of material fact as to whether the Farwell defendants breached a duty they owed decedent to install spirators.

Unlike Gallaher & Speck, the Farwell defendants have not argued that they had no prior knowledge of the need for spirators. Although this failure to raise the point may constitute waiver on appeal, the point must be considered to properly determine the issue of duty.

The Farwell defendants could have claimed that they lacked this knowledge and relied on the expertise of Gallaher & Speck to make proper recommendations as to the need for spirators. The record indicates that Friedman suggested as much in his deposition. The record suggests that Gallaher & Speck was an independent contractor; generally, a landowner is not responsible for the negligence of an independent contractor. (See, *e.g., DiMaggio v. Crossings Homeowners Association* (1991), 219 Ill. App. 3d 1084, 1089, 580 N.E.2d 615, 618.)

However, there is an exception to this general rule in the landlord-tenant context when the landlord retains control of the area where the contractor worked. (*Glickauf v. Maurer* (1874), 75 Ill. 289; W. Prosser, Torts §63, at 411 (4th ed. 1971).) Consequently, the Farwell defendants cannot argue that they delegated their duty to exercise reasonable care in the maintenance of the elevator to Gallaher & Speck.

In sum, it would appear that plaintiff is able to show that defendants owed a duty of reasonable care to decedent, given the record on appeal.

### B

■ As plaintiff notes, however, the trial court granted summary judgment to defendants upon the issue of causation. Plaintiff may establish a genuine issue of material fact regarding causation with circumstantial evidence when an inference may be reasonably drawn therefrom, but damages cannot be awarded on the basis of conjecture, guess or speculation as to what caused decedent's death. (*Tarulis v. Prassas* (1992), 236 Ill. App. 3d 56, 603 N.E.2d 13; *Kellman v. Twin Orchard Country Club* (1990), 202 Ill. App. 3d 968, 974, 560 N.E.2d 888, 892; *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331.) The circumstances must justify an inference of probability, as opposed to possibility. See *Geelan v. City Of Kankakee* (1992), 239 Ill. App. 3d 528, 530-31, 605 N.E.2d 1015, 1017.

In this case, the record indicates that shortly after leaving the building to put a license plate on his car, wearing a white tee shirt and shorts or slacks, decedent was found at the bottom of an elevator shaft, clad in his pajamas. Other tenants indicated that the hoistway door on the second floor was standing open at this time. The elevator cab was stuck between the second and third floors. Abrams noticed mail addressed to the name of "Schwartz" stacked near the elevator door on the second floor. The record also indicates that there was only a four-foot drop from the first-floor landing to the pit of the elevator shaft.

Plaintiff argues that it is reasonable to infer from this record that decedent entered the shaft at the second-floor landing in the mistaken belief that the elevator was present, due to the lack of spirators on the hoistway doors. Indeed, plaintiff suggests this is the most probable scenario. Defendants contend that plaintiff's scenario is speculative. Defendants argue that decedent may have jumped into the elevator shaft, slipped into the elevator shaft, fallen while reaching into the shaft in an attempt to fix the elevator himself, run into the shaft or

forced open the doors himself. Defendants maintain that there is no reasonable basis for selecting any of these scenarios as the most probable.

■ It is apparent that all of the above scenarios rely on a chain of inferences. Although there is no rule against basing an inference upon another inference, at some point, the probative value of such inferences becomes so weak that they should not be permitted. (See *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 637, 360 N.E.2d 1324, 1329.) Ultimately, the existence of a fact cannot be inferred when a contrary fact could be inferred with equal certainty from the same evidence. (See, *e.g., Yedor v. Centre Properties, Inc.* (1988), 173 Ill. App. 3d 132, 143, 527 N.E.2d 414, 421.) In this case, even if a trier of fact could reasonably infer from the circumstantial evidence presented here that decedent entered the elevator shaft at the second-floor landing, it is no more likely on this record that the lack of spirators caused decedent's death than it is that they did not cause the death. The trial court, in its discretion, concluded that a trier of fact would be required to speculate on this latter point.

In her reply brief, plaintiff admits that the absence of eyewitness testimony in this case makes any determination of causation "difficult," but attempts to dismiss the other possible scenarios by stating that she

"is not asserting that the Defendant's [*sic*] were negligent by causing Burton Schwartz to slip and/or trip into the elevator shaft. Instead, Defendant's [*sic*] were negligent in their failure to prevent the condition that allowed for the opening in the shaft."

Asserting a difference between a condition and a cause does not aid plaintiff. In *Carr v. Lee J. Behl Hotel Corp.* (1944), 321 Ill. App. 432, 53 N.E.2d 295, the plaintiff slipped on an icy spot in an alley and fell against an unsecured door to defendant's building which gave way such that plaintiff tumbled down a flight of stairs inside the building. This court held that the slipping was the proximate cause and the door a mere condition of the injury. In this case, given slipping as a possible scenario, the result could be similar.

In sum, we cannot conclude that the trial court abused its discretion in granting summary judgment to defendants, given the facts and circumstances (or lack thereof) in this case.

### III

■ Finally, plaintiff contends that the trial court misapplied *Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 294, 560 N.E.2d 586, 590, in

which our supreme court indicated that a trial court cannot weigh a witness' deposition with a subsequent affidavit of that witness to determine proximate causation and grant summary judgment. However, in this case, there is no evidence of the cause in fact of decedent's death, leaving only speculation, guess and conjecture. There was no evidence to (improperly) weigh.

Plaintiff also implies that the *Pedrick* standard does not apply to summary judgment proceedings. However, the above-cited *Pyne* decision indicates that the *Pedrick* standard is appropriate where the evidence submitted is all that would be submitted at trial. In this case, the transcript indicates that plaintiff's counsel indicated that there would be no eyewitnesses produced in this case. Thus, the *Pedrick* standard was appropriate here.

For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.