No. 1-07-1419

SIXTH DIVISION
August 15, 2008

No. 1-07-1419

| | | |
|---|---|---|
| STACIE BOVAN, individually and as | ) | |
| Special Administrator of the Estate of | ) | |
| Lorenzo Hamilton, deceased, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | |
| AMERICAN FAMILY LIFE INSURANCE | ) | No. 03 L 3457 |
| COMPANY, and ERIC J. LINDSAY, | ) | |
| | ) | |
| Defendants-Appellee | ) | Honorable |
| | ) | Marcia Maras, |
| (Patrick Davis, Anthony Boyce, and Latoya | ) | Judge Presiding. |
| Williams, | ) | |
| | ) | |
| Third-Party Defendants). | ) | |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Stacie Bovan, administrator of the estate of Lorenzo Hamilton, brought a wrongful death

suit against American Family Life Insurance Company (American Family) and American Family

agent Eric Lindsay. She alleged that Lindsay, as agent for American Family, had sold a life

insurance policy to a man impersonating Hamilton and that the impostor was part of a conspiracy

to murder the real Hamilton so that the conspirators could collect the death benefit. She thus

contended that Hamilton's death was a direct result of Lindsay's negligence in processing the

impostor's application and American Family's negligence in issuing the policy.

The trial court granted summary judgment in favor of Lindsay, finding that Bovan had

failed to produce any evidence that would support a finding that Lindsay owed a duty of care to Hamilton or that Lindsay's actions were the proximate cause of Hamilton's death. (Bovan's claim against American Family remains pending in the circuit court.) Bovan now appeals the trial court's finding of summary judgment with respect to Lindsay. Bovan also appeals the trial court's decision to strike the affidavit of Bovan's expert witness Gregory Wimmer. For the reasons that follow, we affirm.

I. BACKGROUND

Bovan, individually and as special administrator of the estate of Hamilton, filed her first amended complaint for wrongful death against American Family and Lindsay on September 12, 2003. The complaint alleges the following, in relevant part.

Patrick Davis, Anthony Boyce, and Latoya Williams plotted to obtain a life insurance policy in Hamilton's name and then murder Hamilton so that they could collect the death benefit. To this end, on or about January 19, 2001, Davis and Boyce went to the insurance office of Lindsay, an American Family agent. Lindsay allegedly helped Davis complete an application for a life insurance policy in Hamilton's name with a death benefit in the amount of $500,000. (It is not alleged that Lindsay was a part of the conspiracy or knew about their plans to murder Hamilton.)

The application allegedly contains a number of inaccuracies: It misstates Hamilton's address, phone number, and employment information, it does not contain the requested driver's license information, and it incorrectly states that Latoya Williams is Hamilton's fiancee. In addition, it is alleged that while Davis was 21 years old, 6 feet 1 inch and 135 pounds at the time

the policy was issued, Hamilton was 31 years old, 5 feet 9 inches and 170 pounds. The complaint then avers that, as a result of these discrepancies, American Family and Lindsay should have known that Davis was not Hamilton and had no insurable interest in Hamilton's life. Nevertheless, American Family issued the policy.

The complaint further alleges that, on or about January 21, 2001, Davis and Boyce shot and killed Hamilton. It alleges that, but for their desire to collect the benefits of the life insurance policy on Hamilton's life, they would not have murdered him. It contends that the negligence of American Family and Lindsay in failing to properly investigate the material facts before issuing the policy was the proximate cause of Hamilton's death. Hence, Bovan seeks damages from American Family and Lindsay for Hamilton's death, pursuant to the terms of the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)).

Lindsay filed a motion to dismiss Bovan's claims against him, contending that Bovan failed to allege any facts that would demonstrate that Lindsay personally owed any duty of care toward Hamilton or that Lindsay owed a duty to Hamilton as an agent of American Family. In response, Bovan argued that under Illinois agency law, if a principal owes a duty to a third party, and the agent plays an "active part" in violating that duty, then the agent can be held liable to the third party in tort. In support of this contention, Bovan cited *Grover v. Commonwealth Plaza Condominium Ass'n*, 76 Ill. App. 3d 500, 507, 394 N.E.2d 1273, 1279 (1979).

The court granted Lindsay's motion to dismiss, but it gave Bovan 30 days to amend her complaint to add allegations that Lindsay played an "active part" in violating a duty that American Family owed to Hamilton. Pursuant to this order, Bovan filed her second amended

complaint on February 18, 2004. For purposes of this appeal, the facts alleged in the second amended complaint are substantially the same as in the first amended complaint. However, the second amended complaint adds allegations that Lindsay "actively conducted business" as American Family's agent; that he "actively completed the life insurance application" on American Family's behalf; and that in "actively preparing" the policy, Lindsay had a duty to exercise care and caution. Lindsay again filed a motion to dismiss, but the court denied Lindsay's motion.

Lindsay then filed a motion for summary judgment, in which he set forth two key arguments. First, he contended that the undisputed facts showed that he had no duty to Hamilton as a matter of law and that, even assuming *arguendo* that such a duty existed, there was no evidence to show that Lindsay had played an "active part" in violating any such duty. Second, Lindsay contended that Lindsay's actions as alleged by Bovan could not be considered the proximate cause of Hamilton's death, as Lindsay could not have foreseen Hamilton's death as the result of his actions, and Bovan had not proffered evidence to demonstrate that Hamilton's death would not have occurred but for Hamilton's alleged negligence.

In response to Lindsay's motion for summary judgment, Bovan offered, among other things, an affidavit by an expert witness named Gregory Wimmer whom she had retained to offer opinions in connection with her suit.[1] In his affidavit, Wimmer stated that he was a litigation consultant and expert witness specializing in life and health insurance. Based upon his

---

[1] Wimmer subsequently amended his affidavit; since it is the amended affidavit that was eventually struck by the court, it is the allegations in that affidavit that shall be discussed here.

education, training, and experience in the insurance industry, he claimed to be familiar with the standard of care for insurance producers in Illinois, as well as with Illinois requirements regarding the application and approval process for life insurance policies.

Wimmer stated that he had reviewed American Family's underwriting file, American Family's rules and guidelines relating to the issuance of life insurance policies, and deposition testimony and affidavits of various American Family employees, including that of Lindsay. Based upon his review of these documents, he stated that it was his understanding that in personally processing Davis's application, Lindsay "ignored many red flags, suspicious conduct, inconsistent statements, and failed to fully explain and provide material information on the application." He therefore opined that Lindsay breached the duty of ordinary care with regard to the life insurance policy issued on Hamilton. Specifically, he said that Hamilton had a duty to submit completed applications to American Family only after he had asked and received "viable, reasonable answers," which he had not done in the instant case. He also opined that Lindsay's conduct in processing the application without questioning the representations of Davis or his suspicious behavior constituted active participation in the issuance of the policy. He also stated that he believed that Hamilton would not have been killed if Lindsay had exercised ordinary care in his handling of the application.

Lindsay then filed a motion to strike Wimmer's affidavit, contending that it was not based upon Wimmer's personal knowledge and that it was composed primarily of factual and legal conclusions unsupported by the evidence, in violation of Illinois Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)). American Family subsequently joined in this motion.

No. 1-07-1419

The court held a hearing on May 1, 2007, to consider both Lindsay's summary judgment motion and Lindsay's motion to strike Wimmer's affidavit. With respect to Wimmer's affidavit, the court noted that in subsequent deposition testimony, Wimmer had admitted, among other things, that each insurance company had its own underwriting manuals and policies and that he had no knowledge with regard to American Family policies. The court thus found that Wimmer lacked proper knowledge to form an expert opinion on whether Lindsay had taken adequate care in processing the policy taken out on Hamilton's life.

With respect to Lindsay's motion for summary judgment, the court stated: "[I]t is undisputed that Mr. Lindsay only filled out information in part one and submitted to American Family." As a result, it found, "In no way did Mr. Lindsay investigate and issue this policy. We agree that there is no evidence to support the conclusion that Eric Lindsay breached his duty to American Family. Lindsay could not have actively participated in any alleged American Family breach." It also stated, "At best, Mr. Lindsay's alleged conduct did nothing more than furnish a condition and that condition caused Hamilton's death ***. Subsequent independent and criminal acts of Davis and Boyce and [*sic*] can't be the proximate cause of injury."

Accordingly, the court issued an order granting Lindsay's and American Family's motions to strike Wimmer's affidavit and granting Lindsay's motion for summary judgment. Subsequently, the court made a finding pursuant to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that "there is no just reason to delay appeal from the final order entered on May 1, 2007 entering summary judgment in favor of Eric Lindsay." Bovan then timely filed the instant appeal.

No. 1-07-1419

II. ANALYSIS

On appeal, Bovan raises two key points of contention: She challenges the trial court's grant of summary judgment in favor of Lindsay, arguing that contrary to the trial court's finding, material issues of fact exist with respect to the issues of duty and proximate cause. She also challenges the trial court's discussion to strike Wimmer's affidavit, as she contends that he was sufficiently qualified to testify as an expert. We consider these issues in turn.

Summary judgment is proper where, "when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18, 20 (2002), citing 735 ILCS 5/2-1005(c) (West 2006). We review the trial court's grant of summary judgment *de novo*. *Hartford Fire Insurance Co. v. Everest Indemnity Insurance Co.*, 369 Ill. App. 3d 757, 761, 861 N.E.2d 306, 310 (2006). Furthermore, we may affirm the trial court's grant of summary judgment for any reason that is supported by the record, regardless of whether that reason formed the basis for the trial court's judgment. *Leavitt v. Farwell Tower Ltd. Partnership*, 252 Ill. App. 3d 260, 265, 625 N.E.2d 48, 52 (1993).

To state a cause of action under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)), the plaintiff must show that: (1) defendant owed a duty to the deceased; (2) defendant breached that duty; (3) the breach of duty was the proximate cause of the deceased's death; and (4) monetary damages resulted to persons designated under the Act. *Leavitt*, 252 Ill. App. 3d at 264, 625 N.E.2d at 52; see *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414,

421, 804 N.E.2d 519, 526 (2004) (stating the same general elements in the context of a negligence action). If the plaintiff fails to establish any of these elements, then judgment for the defendant is proper. *Leavitt*, 252 Ill. App. 3d at 264, 625 N.E.2d at 52; see *Bescor, Inc. v. Chicago Title & Trust Co.*, 113 Ill. App. 3d 65, 68, 446 N.E.2d 1209, 1212 (1983) (to state a cause of action in negligence, it is not sufficient for plaintiff to allege that defendant breached a duty; plaintiff must also allege that defendant owed a duty to the person injured). In its hearing on Lindsay's motion for summary judgment, the court found that Bovan had not proffered evidence that, if true, would support judgment for her on the first and third elements, namely, duty and proximate cause. Accordingly, on appeal, Bovan challenges this finding, arguing that under the facts as presented, Lindsay owed Hamilton a duty of care and, furthermore, that a material issue of fact existed with respect to the issue of proximate cause. The existence, or lack thereof, of a duty of care is a question of law to be determined by the court, while the issue of proximate cause is a factual matter for the finder of fact to judge. *Bajwa*, 208 Ill. 2d at 421-22, 804 N.E.2d at 526, citing *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 340, 798 N.E.2d 724, 728 (2003).

With respect to the issue of duty, Bovan first argues that insurance providers, such as American Family, owe a duty of care to proposed insureds such as Hamilton. She furthermore argues that this duty of care should extend to insurance agents like Lindsay both individually and in their capacity as agents. As shall be developed below, we agree with the first proposition but disagree with the second.

To demonstrate that American Family owed Hamilton a duty of reasonable care in issuing

the policy in his name, Bovan cites *Bajwa*, 208 Ill. 2d 414, 804 N.E.2d 519.  In *Bajwa*, the

Illinois Supreme Court found that an insurance company owed a duty of care to advise a

proposed insured of a life insurance policy to be taken out on his life.  *Bajwa*, 208 Ill. 2d at 427,

804 N.E.2d at 528-29.  It stated that, before providing coverage on someone's life, the insurer

had a duty to take "reasonable precautions" to ensure that the insured actually consented to the

issuance of the policy.  *Bajwa*, 208 Ill. 2d at 427, 804 N.E.2d at 529.  However, while *Bajwa*

may speak to the question of whether American Family owed a duty of care to Hamilton, it does

not speak directly to the question of whether Lindsay, as an agent for the insurance company,

owed Hamilton a similar duty.  The question of agent liability was not at issue in *Bajwa*, merely

the issue of liability for the insurer.  *Bajwa*, 208 Ill. 2d at 417, 804 N.E.2d at 523.

Thus, we move to consider Bovan's contention that Lindsay owed a duty to Hamilton in

his individual capacity.  Bovan argues that insurance agents in the field have a personal duty of

care toward proposed insureds such as Hamilton who have policies taken out on their lives, thus

exposing them to liability when tragedies like the instant case occur.

Although we find no case law speaking to the exact situation at hand, the general rule in

Illinois is that an insurance agent working for the insurer has no duty of care toward a customer,

as long as there is no agency relationship between the agent and the customer.  "Whereas the

insured's agent or broker has a duty of care, competence, and skill in performing all aspects of

the insurance transaction, no such duty is imposed upon the insurer's agent regarding its duties

toward a customer of the insurer."  *Bellmer v. Charter Security Life Insurance Co.*, 105 Ill. App.

3d 234, 239, 433 N.E.2d 1362, 1366 (1982) (finding that "[a]bsent an agency relationship

between the insured and the insurance agent, no duty is imposed upon the insurer's agent to notify plaintiff of facts detrimental to the insured for the breach of which negligence liability will lie"); see also *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill. App. 3d 138, 143, 648 N.E.2d 237, 240 (1995) (citing *Bellmer* in support of its finding that an insurance agent without any independent agency relationship to the insured had no duty to inform insured of certain policy restrictions). The distinction is that in the former case, for purposes of tort liability, the duty of reasonable care flows from the relationship between the parties; where there is no such relationship, no such duty arises. *Bellmer*, 105 Ill. App. 3d at 238, 433 N.E.2d at 1366. Thus the *Bellmer* court found that an insurance agent had no duty to inform plaintiffs, relatives of the insured, that the insured had defaulted on his premium payments and that the policy had therefore been terminated. *Bellmer*, 105 Ill. App. 3d at 239-40, 433 N.E.2d at 1367.

This is not to say that an insurance agent can never, under any circumstances, be liable to a proposed insured. If an insurance agent acts so as to induce detrimental reliance by the proposed insured, the agent thereby undertakes an individual duty not to betray that reliance by his subsequent acts. *Cf. Wakulich v. Mraz*, 203 Ill. 2d 223, 241, 785 N.E.2d 843, 854 (2003) (quoting *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 239, 665 N.E.2d 1260, 1273 (1996), for the proposition that " 'one who undertakes, gratuitously or for consideration, to render services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care in the performance of the undertaking' "). This reliance theory is displayed in *Talbot v. Country Life Insurance Co.*, 8 Ill. App. 3d 1062, 291 N.E.2d 830 (1973). In *Talbot*, plaintiff's husband applied for life insurance, but it was alleged that the insurance

agent failed to process the application within a reasonable time, and plaintiff's husband died before the policy could be issued. The court found that plaintiff stated a valid cause of action against the insurance agent, despite the fact that the insurance agent was not acting as agent for the plaintiff's husband. In doing so, the court applied the principle:

"[O]ne who enters upon an affirmative undertaking, to perform a service for another, is required to exercise reasonable care in performing it, to avoid injury to the beneficiary of the undertaking. Insurance agents who take applications, particularly where they receive premiums, may be said to have entered definitely upon a course of affirmative conduct, and be liable for misfeasance if they unreasonably delay." *Talbot*, 8 Ill. App. 3d at 1065, 291 N.E.2d at 832, citing W. Prosser, *Delay in Acting on an Application for Insurance*, 3 U. Chi. L. Rev. 39 (1935).

The court went on to state that, under this principle:

"the agent or company owes an applicant for insurance what amounts to be a legal obligation to act with reasonable promptness on the application, either by providing the desirable coverage or by notifying the applicant of the rejection of the risk so that he may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere." *Talbot*, 8 Ill. App. 3d at 1065, 291 N.E.2d at 832.

This principle would not apply under the facts of this case, where there was absolutely no dealing between the agent and the purported insured and, consequently, no affirmative undertaking. Rather, this case involves the issuance of a policy to an impostor in a context where the purported insured had no contact or course of dealing whatsoever with the carrier or the agent.

Consequently, there is no circumstance here that would require that we deviate from the general controlling principles as articulated in *Bellmer* and *Mackinac*: namely, that an insurance agent acting on behalf of the insurer has no independent duty of care toward the deceased with whom he had no contact or course of dealing and, consequently, with whom he did not enter into any affirmative undertaking.

This rule is consonant with the rule in cases involving employee liability outside the insurance context. For instance, in *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 694 N.E.2d 565 (1998), the Illinois Supreme Court held that a discharged worker could not bring a retaliatory discharge claim against the employee who actually fired the worker. In limiting the tort of retaliatory discharge to the employer, the court reasoned that it is the employer who has the authority to fire; the agent who carries out the employer's will has no authority of his own. Thus, it is the employer and not the employer's agent who should be held liable for any damages caused. *Buckner*, 182 Ill. 2d at 21, 694 N.E.2d at 569-70. The court also stated that "[t]he policy considerations that motivated this court to recognize a retaliatory discharge cause of action are adequately vindicated by allowing a cause of action against employers," since the purpose of the tort was to discourage malfeasance on the part of employers. *Buckner*, 182 Ill. 2d at 20, 694 N.E.2d at 569.

This reasoning applies equally well to the case before us today. American Family is the party that had authority to decide whether to issue the policy that allegedly led to Hamilton's death, so it is reasonable that the burden of care should be placed upon American Family rather than Lindsay, who had no ultimate control over the issuance of the policy. This result is

consistent with the decision in *Bajwa*, which discussed only the liability of the carrier, thus leaving the liability of the employee to be resolved under general tort principles that are otherwise applicable.

Bovan contends that regardless of the issue of individual duty, Lindsay exposed himself to liability by virtue of his status as agent, given the fact that he played an "active part" in violating a duty that American Family owed to Hamilton. We disagree.

It is a general principle of agency law that "[a]n agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party." Restatement (Third) of Agency §7.02, at 138 (2006); see *Bescor*, 113 Ill. App. 3d at 68, 446 N.E.2d at 1212; *Cahill v. Eastern Benefit Systems, Inc.*, 236 Ill. App. 3d 517, 522, 603 N.E.2d 788, 792 (1992) (stating the same principle); *Gateway Erectors Division of Imoco-Gateway Corp. v. Lutheran General Hospital*, 102 Ill. App. 3d 300, 302, 430 N.E.2d 20, 22 (1981). The facts of *Bescor* illustrate this principle well. In *Bescor*, the plaintiff was not paid for construction work that he performed. He brought a suit for negligence against not only the owner of the project, but also the owner's agent in charge of disbursing funds to the contractors. Plaintiff alleged that the nonpayment was directly attributable to the disbursing agent's negligence in accidentally paying the wrong party. Nevertheless, the court applied the general principle above to dismiss all claims against the disbursing agent, on the grounds that plaintiff had not shown that the disbursing agent owed him any duty. *Bescor*, 113 Ill. App. 3d at 68, 446 N.E.2d at 1212-13. It found that in order to

prevail, plaintiff "was required to allege facts from which a legal duty would arise apart and distinct from those duties pleaded merely establishing the agent's duties to its principal." *Bescor*, 113 Ill. App. 3d at 68, 446 N.E.2d at 1213. As plaintiff failed to do so, there could be no recovery. *Bescor*, 113 Ill. App. 3d at 68, 446 N.E.2d at 1213; see also *Cahill*, 236 Ill. App. 3d at 522, 603 N.E.2d at 792 (finding that plaintiff's complaint failed to allege a valid cause of action in tort against a defendant agent where plaintiff did not allege any facts that would show that the agent owed him an independent duty of care). Likewise, applying the rule of *Bescor* and *Cahill* to the case at hand, Bovan cannot rely on American Family's potential tort liability under *Bajwa* to hold Lindsay otherwise accountable in his capacity as agent.

Bovan cites the case of *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 382 N.E.2d 1217 (1978), for the proposition that where an agent's actions render the principal liable, such acts also render the agent liable. However, this case does not support Bovan's assertion that Lindsay owes a duty to Hamilton. In context, *Towns* deals with the doctrine of *respondeat superior*: it states that, when an action is brought against a principal for the negligent acts of his agent, the principal's liability is entirely derivative and vicarious. *Towns*, 73 Ill. 2d at 123-24, 382 N.E.2d at 1221. It says nothing about a principal's duty of care toward a third party being imputed to an agent where, as in this case, the principal's liability is direct rather than wholly derivative. See *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 525, 695 N.E.2d 518, 522 (1998) ("acts of the principal are never imputed to the agent").

Bovan furthermore contends that, notwithstanding the principles of agent tort liability outlined above, the case of *Grover*, 76 Ill. App. 3d 500, 394 N.E.2d 1273, supports her

conclusion. In *Grover*, a condominium owner brought suit against his condominium association and the association's agent, alleging breach of an agreement regarding the installation of heating units in the condominiums. The association's agent contended that it could not be held liable for promulgating the alleged agreement, as it was merely acting as an agent on behalf of the association. However, the court rejected this argument, stating: "While the general rule is that an agent whose agency is disclosed is not liable on an agreement entered into on behalf of his principal, absent an agreement to that effect, an agent who exceeds his authority or who takes an active part in violating a duty the principal owes to a third person may be held liable." *Grover*, 76 Ill. App. 3d at 507, 394 N.E.2d at 1279. We note that *Grover* does not concern an agent's liability in tort, but rather in contract.

However, more overridingly, the *Grover* decision has been repudiated by subsequent decisions, most notably in the case of *Gateway Erectors*, 102 Ill. App. 3d at 303, 430 N.E.2d at 22. The *Gateway Erectors* court found the above-quoted proposition in *Grover* to be inconsistent with prior case law regarding agent liability, as well as the Restatement of Agency. *Gateway Erectors*, 102 Ill. App. 3d at 303, 430 N.E.2d at 22, citing *Chicago Title & Trust Co. v. De Lasaux*, 336 Ill. 522, 526, 168 N.E. 640 (1929) (where his principal is disclosed, an agent is not liable on the contracts he makes on behalf of that principal, unless he agrees to be personally liable). Furthermore, the court states that the *Grover* court's expansion of liability is unsupported: not only did the key case cited by the *Grover* court (*Landau v. Landau*, 409 Ill. 556, 101 N.E.2d 103 (1951)) not relate to contractual liability, but *Landau* cites *DeLasaux*, which runs directly counter to the *Grover* decision. See also *Joe & Dan International Corp. v. United*

*States Fidelity & Guaranty Co.*, 178 Ill. App. 3d 741, 533 N.E.2d 912 (1988) (finding that

*Grover* was incorrectly decided insofar as it purported to make an agent liable on contracts with

third parties where it had apparent authority from its principal, even if the agent lacked actual

authority). Because we agree that the decision in *Grover* is an anomaly, we decline to expand the

*Grover* decision's broad and sharply criticized view of agent liability in contract to cover the

instant tort case.

Thus, we find that Bovan has failed to establish the element of duty, as needed to prevail

in a wrongful death suit, and the trial court's grant of summary judgment must be affirmed. See

*Bescor*, 113 Ill. App. 3d at 68, 446 N.E.2d at 1212-13 (a plaintiff's negligence claim must fail

where the plaintiff has failed to show that defendant owed him a duty of care). The lack of any

evidence that would show Lindsay owed Hamilton a duty of care is sufficient to affirm the

court's entry of summary judgment in favor of Lindsay. As a result, we do not need to reach the

issue of whether Lindsay's actions were the proximate cause of Hamilton's death.

Bovan also challenges the trial court's decision to strike the affidavit of her expert,

Wimmer. However, we find no need to review the propriety of the trial court's ruling as to the

sufficiency of the Wimmer affidavit for purposes of this appeal from the summary judgment

granted in favor of Lindsay. Even if, for the sake of argument, we were to accept Wimmer's

affidavit as valid, it could have no impact on our resolution of this case. Nothing in the affidavit

provides support for the proposition that Lindsay owed any duty toward Hamilton, either

personally or in his capacity as agent for American Family. Wimmer's affidavit speaks to the

issue of whether Lindsay's actions in processing the application conformed to the appropriate

-16-

standard of care for an American Family insurance agent and, more generally, for agents in insurance industry; for instance, it states that Lindsay ignored "suspicious conduct" and "inconsistent statements" offered by the man impersonating Hamilton. This affidavit would be relevant in determining whether Lindsay would have breached his duty to the plaintiff if, indeed, he were under such a duty in the first instance. However, the substance of the affidavit does not impact our prior analysis in determining whether such a duty of care exists in the first place – which, pursuant to our previous discussion, we have determined not to be the case. See *Bescor*, 113 Ill. App. 3d at 68, 446 N.E.2d at 1212-13 (breach of duty alone, in the absence of a showing that defendant owed a duty of care to plaintiff, insufficient to support a finding of negligence). Consequently, the striking of the affidavit does not affect our decision to affirm the trial court's grant of summary judgment in favor of Lindsay, and therefore it provides no grounds for reversal. See *Bafia v. City International Trucks, Inc.*, 258 Ill. App. 3d 4, 10, 629 N.E.2d 666, 671 (1994) ("Erroneous evidentiary rulings will not support a reversal unless the error was prejudicial and affected the outcome of the trial"). Accordingly, there is no need for us to determine the propriety of this affidavit for purposes of our review of the summary judgment in favor of the employee, Lindsay, which is all that is now before us.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McBRIDE, P.J., and O'MALLEY, J., concur.

| | **REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**<br>**(Front Sheet to be Attached to Each Case)** |
|---|---|
| Please use the following form | Stacie Bovan, individually and as Special Administrator of the Estate of Lorenzo Hamilton, deceased,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>American Family Life Insurance Company and Eric J. Lindsay,<br><br>Defendants-Appellee<br><br>(Patrick Davis, Anthony Boyce, and Latoya Williams,<br><br>Third-Party Defendants). |
| Docket No.<br><br>COURT<br><br><br><br>Opinion Filed | No. 1-07-1419<br><br>Appellate Court of Illinois<br>First District, <u>SIXTH</u> Division<br><br>August 15, 2008<br>(Give month, day and year) |
| <br><br>JUSTICES | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:<br><br>McBride, P.J., and O'Malley, J. , concur. |
| APPEAL from the Circuit Court of Cook County; the Hon___ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County.<br><br>The Hon. Marcia Maras Judge Presiding. |
| <br><br><br><br>APPELLANTS:<br>John Doe, of Chicago | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>APPELLANT: Christopher Freeman, Law Offices of Steven J. Seidman, 20 South Clark Street, Suite 700, Chicago, IL 60603 |
| For APPELLEES, Smith and Smith of Chicago | APPELLEES: Joshua G. Vincent and Carol Proctor, Hinshaw & Culbertson LLP, 222 N. LaSalle, Suite 300, Chicago, IL 60601 |
| Add attorneys for 3rd party appellants and/or appellees. | |