In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-3761

CAROLYN SCHUR, Special Administrator of the
Estate of Pamela Hoppe, Deceased,

*Plaintiff-Appellant,*

*v.*

L.A. WEIGHT LOSS CENTERS, INC.,
SHANI POOLE, and COURTNEY MORR,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 CV 353—**William D. Stiehl**, *Judge.*

ARGUED FEBRUARY 26, 2009—DECIDED AUGUST 14, 2009

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Illinois citizen Pamela Hoppe died
of liver failure a few months after beginning a diet pro-
gram offered and administered by L.A. Weight Loss
Centers, Inc. Hoppe's sister, Carolyn Schur, filed suit
against the company on behalf of Hoppe's estate in
Illinois state court. L.A. Weight Loss removed the case to

the Southern District of Illinois based on diversity of citizenship. A magistrate judge subsequently granted Schur leave to amend her complaint to join three new defendants, two of whom were Illinois citizens. Eleven days after filing her second amended complaint, Schur moved to remand the case to Illinois state court because the new parties negated complete diversity. The district judge denied Schur's motion to remand, finding that Schur had fraudulently joined the two Illinois defendants to destroy the court's diversity jurisdiction. The judge struck Schur's second amended complaint and ultimately granted summary judgment against her.

In addition to appealing the summary judgment decision, Schur claims that the district judge erred by striking her second amended complaint after denying her motion to remand the case to state court. If that decision was error, she claims that the district court did not have jurisdiction to grant summary judgment. This case presents a series of interesting jurisdictional issues, some of which we have not previously considered. In the end, we agree with Schur that L.A. Weight Loss did not establish that joinder was inappropriate, and therefore the district judge erred in declining to remand the case to Illinois state court.

## I. BACKGROUND

In mid-2004, forty-two-year-old Pamela Hoppe resolved to lose weight. To achieve her goal, Hoppe enrolled in a diet and weight loss program offered by her local L.A. Weight Loss Center in O'Fallon, Illinois ("the

Center"). During Hoppe's initial visit on April 27, 2004, the Center's assistant manager, Courtney Morr, explained the services that L.A. Weight Loss offered, requested that Hoppe complete an information and medical history form, and enrolled her in a program. In addition to providing a strict diet and weekly counseling, the program suggested that Hoppe take a regimen of nutritional supplements. That same day, Hoppe purchased a three-month supply of five supplements marketed and sold by L.A. Weight Loss. She began her program, and less than one month later, she purchased an additional three-month supply of two of the supplements.

Tragically, Hoppe would not need the additional supply. On August 5, 2004, she visited a local hospital complaining of jaundice and nausea. The hospital transferred her to St. Louis University Hospital, where she was diagnosed with acute liver hepatitis. Hoppe's condition deteriorated, and she died on August 29.

On April 13, 2005, Carolyn Schur, Hoppe's surviving sister, filed suit on behalf of Hoppe's estate in Illinois state court. The complaint alleged a variety of state law claims against L.A. Weight Loss arising from the administration of Hoppe's diet program. Specifically, Schur claimed that the recommended nutritional supplements caused Hoppe's liver failure. She averred that L.A. Weight Loss improperly recommended supplements without testing their safety, failed to warn Hoppe of the associated risks, lacked adequate procedures for ensuring the safety of its diet plans, and provided dangerous mixtures of supplements. Schur later presented evidence from

Hoppe's treating physicians and one expert witness suggesting that her liver condition was drug-induced. These witnesses also testified that certain ingredients in the supplements could be toxic to the liver: chromium, borage seed oil, Ho Shou Wu, Gotu Kola, and niacinamide.

On May 17, 2005, L.A. Weight Loss, incorporated in Delaware with its principal place of business in Pennsylvania, removed the suit to the Southern District of Illinois based on diversity of citizenship. *See* 28 U.S.C. §§ 1332(a), 1441(a). The parties proceeded with discovery in federal court for over one year, until August 3, 2006, when Schur filed a motion for leave to amend her complaint to add claims against three additional defendants. L.A. Weight Loss did not object to or oppose the motion.

A magistrate judge granted Schur's motion for leave to amend on August 10, 2006, and Schur filed her second amended complaint the next day. Among other amendments, Schur added negligence claims against two L.A. Weight Loss employees: Morr, the assistant manager who enrolled Hoppe in the weight loss program and sold her the supplements; and Shani Poole, the general manager, who allegedly approved, participated in, or supervised Hoppe's program. Poole and Morr, both Illinois citizens, each answered the newly amended complaint. Neither defendant moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). L.A. Weight Loss did not challenge the magistrate judge's order permitting the joinder.

On August 21, Schur moved to remand the case to state court because the addition of Poole and Morr as defen-

dants destroyed the federal district court's diversity jurisdiction. L.A. Weight Loss opposed the motion on the ground that Schur had fraudulently joined the nondiverse defendants. The district judge agreed with L.A. Weight Loss on March 5, 2007, finding that it was "reasonably unlikely" that Schur could prevail against the individual defendants because Illinois law would not permit Poole and Morr to be personally liable for torts committed within the scope of their employment. The district judge also noted that joinder was untimely because Schur had known of Poole and Morr's identities for nearly one year prior to joining them as parties. Because Schur did not properly join the nondiverse defendants, the district judge struck her second amended complaint, and, with diversity jurisdiction still intact, denied her motion to remand. The judge granted Schur leave to re-amend her complaint, but she instead filed a motion for reconsideration, which the district judge denied.

The case progressed, and L.A. Weight Loss filed a motion for summary judgment on July 16, 2007, which the district court granted on October 17. Schur now appeals and claims that the district judge erred in (1) denying her motion to remand after she properly joined two nondiverse parties, and (2) granting summary judgment against her.[1] We agree with Schur that the district judge

---

[1] In granting summary judgment, the district court struck the proposed opinion of Schur's only expert witness, a decision that Schur also appeals. Because we find that the district court lacked jurisdiction to address the merits of Schur's claim, we need not address this issue.

improperly denied remand, and we therefore do not reach the merits of the court's summary judgment ruling.


## II. ANALYSIS

Before we may address Schur's substantive arguments, we must first examine the basis for federal jurisdiction. *See Aaron v. Mahl*, 550 F.3d 659, 662 (7th Cir. 2008). We review *de novo* questions of subject matter jurisdiction, including the denial of a motion to remand, *Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 628 (7th Cir. 2007), but we typically review a district court's decision to deny joinder for an abuse of discretion, *see Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992).

According to Schur, after the magistrate judge allowed her to join two nondiverse defendants, the district court no longer possessed diversity jurisdiction and was required to remand the case to state court. L.A. Weight Loss, however, maintains that the district judge had the authority to reconsider the magistrate judge's order, determine that joinder was inappropriate, refuse to join the nondiverse defendants, and retain subject matter jurisdiction. Both parties are correct on certain points, but the analysis is not as simple as either party suggests.


### A. *Diversity Jurisdiction, Removal, and Joinder of a Nondiverse Defendant*

Although federal diversity jurisdiction provides a neutral forum for lawsuits between parties from different

states, we interpret such jurisdiction narrowly and require *complete* diversity of citizenship to invoke it. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)); *see also* 28 U.S.C. § 1332(a).[2] When a plaintiff files suit in state court but could have invoked the original jurisdiction of the federal courts, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1441(a). The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). L.A. Weight Loss properly removed this action to the Southern District of Illinois based on diversity jurisdiction on May 17, 2005.

Following removal, Schur sought to join as defendants two Illinois residents whose presence would destroy diversity jurisdiction. When joinder of a nondiverse party would destroy subject matter jurisdiction,[3] 28 U.S.C. § 1447(e) applies and provides the district court two

---

[2] In addition to complete diversity, § 1332(a) requires that the amount in dispute exceed $75,000; the parties agree that this lawsuit satisfies that requirement.

[3] This is in contrast to an ordinary pretrial amendment under Rule 15(a), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

options: (1) deny joinder, or (2) permit joinder and remand the action to state court. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir. 1996). These are the only options; the district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction. *See Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999); *see also* David D. Siegel, *Commentary on 1988 Revision of Section 1447*, *in* 28 U.S.C.A. § 1447 (2009) (noting that Congress rejected an approach permitting a court to allow joinder and retain the case). A district court has discretion to permit or deny post-removal joinder of a nondiverse party, and the court should balance the equities to make the determination. *Mayes*, 198 F.3d at 463; *see also Perez v. Arcobaleno Pasta Machs., Inc.*, 261 F. Supp. 2d 997, 1001 (N.D. Ill. 2003); *In re Bridgestone/Firestone, Inc.*, 129 F. Supp. 2d 1202, 1204 (S.D. Ind. 2001).

Our court has not articulated a framework for determining whether post-removal joinder of a nondiverse party is appropriate. Many other courts, however, including district courts within our circuit, have applied the following factors, which we now adopt: (1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations. *See, e.g., Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009); *Mayes*, 198 F.3d at 462; *Hensgens v. Deere & Co.*, 833 F.2d

1179, 1182 (5th Cir. 1987);[4] *Perez*, 261 F. Supp. 2d at 1001; *In re Bridgestone/Firestone*, 129 F. Supp. 2d at 1204.

If this were all there was to it, this case would be relatively simple. We would review the district judge's refusal to allow Schur to join nondiverse defendants Poole and Morr for an abuse of discretion. But this case includes additional complications: (1) the magistrate judge actually *granted* Schur leave to amend, and Schur joined Poole and Morr in her second amended complaint; and (2) the district judge erred when reconsidering the magistrate judge's decision.

## B.   The District Judge's Review

We must take a slight detour to examine the district judge's authority to reconsider the magistrate judge's joinder determination. Schur asserts that once the magistrate judge allowed her to file her second amended complaint, which joined two nondiverse defendants, the district judge lacked jurisdiction and was *required* to remand the case under § 1447(e). Schur's argument is not without support, *see, e.g.*, *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999) ("[P]ost-removal joinder of non-diverse defendants . . . destroys diversity for juris-

---

[4] *Hensgens* was decided prior to the addition of 28 U.S.C. § 1447(e), but numerous courts have relied upon its analysis when determining whether joinder is proper under § 1447(e). *See, e.g.*, *Alpers Jobbing Co. v. Northland Cas. Co.*, 173 F.R.D. 517, 520 n.6 (E.D. Mo. 1997) (collecting cases).

dictional purposes and requires remand, even when the newly joined defendants are not indispensable."), but this case is more complex.

The parties do not question that the magistrate judge possessed the initial authority to grant Schur's motion to amend. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); S.D. Ill. R. 72.1(a). The relevant provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), implemented through Federal Rule of Civil Procedure 72(a), permits a district judge to assign certain "nondispositive" pretrial matters to a magistrate judge to "hear and *decide*." Fed. R. Civ. P. 72(a) (emphasis added); *see also* S.D. Ill. R. 72.1(a)(1) (assigning to a magistrate judge "all pretrial motions for hearing and *determination*" (emphasis added)).

A district court may also assign dispositive motions to a magistrate judge,[5] in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

In the Southern District of Illinois, "all pretrial motions," with certain exceptions, are automatically assigned to a

---

[5] The parties may also consent to trial or proceedings concerning dispositive matters before a magistrate judge, *see* Fed. R. Civ. P. 73, which did not occur in this case.

magistrate judge. S.D. Ill. R. 72.1(a)(1). Although a motion to remand is specifically excepted from the automatic assignment in local rule 72.1(a), a motion to amend a pleading is not.[6] *See id.*

After a magistrate judge rules (on a nondispositive matter) or makes a report and recommendation (on a dispositive matter), either party may object within ten days. Fed. R. Civ. P. 72; S.D. Ill. R. 73.1(a) (labeling the procedure for nondispositive matters an "appeal"). Upon objection, the district judge must review the relevant part of the magistrate judge's decision, but the standard of review varies depending on whether the matter was dispositive. *Compare* Fed. R. Civ. P. 72(a) (requiring the judge, for nondispositive matters, to "set aside any part of the order that is clearly erroneous or is contrary to law"), *and* S.D. Ill. R. 73.1(a), *with* Fed. R. Civ. P. 72(b) (requiring the judge, for dispositive matters, to "determine de novo any part of the magistrate judge's disposition that has been properly objected to"), *and* S.D. Ill. R. 73.1(b).

If no party objects to the magistrate judge's action, the district judge may simply accept it. But the district judge

---

[6] We have determined that a motion to amend is nondispositive, even where the ruling may prevent joining a defendant. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006). We have not addressed whether a motion to join a nondiverse defendant whose joinder would destroy the court's diversity jurisdiction is "dispositive," and we need not answer the question in this case. As we explain, the district judge was authorized to reconsider the magistrate judge's order, even if it was nondispositive.

remains the final authority in the case, and he may recon-
sider *sua sponte* any matter determined by a magistrate
judge. *See* S.D. Ill. R. 73.1(a). Thus, although the district
judge *must* make an independent determination of a
magistrate judge's order upon objection, he is not
*precluded* from reviewing a magistrate judge's order to
which a party did not object.[7] *See Allen v. Sybase, Inc.*, 468
F.3d 642, 658 (10th Cir. 2006) ("[A] party's failure to seek
timely review does not strip a district court of its power
to revisit the issue."); *Phillips v. Raymond Corp.*, 213
F.R.D. 521, 525 (N.D. Ill. 2003) (noting that if a district
judge has authority to reconsider his *own* nondispositive
discovery rulings, he should have the same authority to
review a magistrate judge's ruling); *cf. Kruger v. Apfel*, 214
F.3d 784, 786-87 (7th Cir. 2000) (per curiam) (noting that
Rule 72(b)'s ten-day deadline is not jurisdictional, a
district judge is not barred from considering late objec-
tions, and even *without* considering the objections, the

---

[7] This issue is distinct from whether a party may, by failing
to object to a magistrate judge's recommendation, waive its
right to *appeal* the recommendation and the district judge's
adoption of it. Rule 72 does not preclude a circuit court of
appeals from establishing such a rule, *Thomas v. Arn*, 474 U.S.
140, 155 (1985), and our circuit has adopted precisely this
type of waiver principle, *see Lorentzen v. Anderson Pest Control*, 64
F.3d 327, 330 (7th Cir. 1995). Even this rule, however, is not
jurisdictional, and we may choose to review the district judge's
decision if objections were not egregiously late and caused
little prejudice to the opposing party. *Hunger v. Leininger*, 15
F.3d 664, 668 (7th Cir. 1994).

district judge should have reviewed the magistrate
judge's dispositive recommendation for clear error).

With these principles in mind, we turn to the case before
us. The twist, of course, is that the magistrate judge's
action permitted joinder of nondiverse parties, potentially
destroying the court's diversity jurisdiction. To further
complicate matters, L.A. Weight Loss did not oppose the
motion to amend, nor did it object to the magistrate
judge's order permitting joinder. The jurisdictional issue
arose only when Schur moved to remand the case to
Illinois state court. According to Schur, this means that
the magistrate judge's order was final, and the district
judge was required to remand.

We disagree. In the circumstances of this case, the
district judge was not precluded from reconsidering the
magistrate judge's order granting Schur's motion to
amend her complaint. Moreover, the record before us
indicates that the magistrate judge never analyzed the
propriety of joining two nondiverse parties.

First, Schur points to L.A. Weight Loss's failure to object
to the magistrate judge's order, but, as we have just
explained, this meant that the district judge was not
*required* to review the order; he was still permitted to
do so *sua sponte* to determine whether it "[was] clearly
erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a);
*see also* S.D. Ill. R. 73.1(a).

Second, and most importantly, the record indicates
that the magistrate judge simply granted Schur's motion as
a routine matter. Although Schur's motion stated the

names of the nondiverse parties, it did not state their citizenship, nor did it raise the jurisdictional implications of joining them. The magistrate judge held no hearing on the motion's merits. In fact, the record does not indicate that the magistrate judge actually *made* a joinder determination at all, as required by § 1447(e). True, L.A. Weight Loss should have known the citizenship of its own employees and objected; by failing to do so, it lost its right to request that the district judge reconsider the order. But that did not prevent the district judge from addressing the issue on his own accord.

Several courts have reached a similar conclusion—that when a district court is unaware that joinder will destroy diversity, it may reconsider its prior decision permitting leave to amend a complaint. *See Bailey*, 563 F.3d at 307; *Mayes*, 198 F.3d at 462 n.11; *Hensgens*, 833 F.2d at 1182; *see also Williams v. Vincent Int'l, Inc.*, 192 F.R.D. 544, 547 (S.D. Miss. 2000) (reversing a magistrate judge's order permitting joinder of nondiverse parties where the magistrate judge did not consider the jurisdictional issue, and plaintiff did not follow the typical procedure of coupling a motion for remand with its motion to amend and filing both with the district court).

The Fourth Circuit's decision in *Mayes* is analogous to the circumstances before us. In *Mayes*, the plaintiff, following removal, joined a nondiverse defendant without leave of court, as permitted by Rule 15(a).[8] 198 F.3d at 462

---

[8] Rule 15(a) permits a plaintiff to amend without leave of court before a responsive pleading is served. Fed. R. Civ. P. 15(a). In

(continued...)

n.11. Because the plaintiff joined the nondiverse party without leave, the district court had no opportunity to decide whether to permit or deny joinder. *Id.* The court held that because the district court would have been forced to remand without ever having determined the joinder's propriety, it could later invoke its authority under § 1447(e) to make that determination. *Id.*

The Eighth Circuit reached a similar outcome, even where the district court *had* an opportunity to deny joinder of two nondiverse parties. *Bailey*, 563 F.3d at 307. The defendant in *Bailey*—who, like L.A. Weight Loss, was the employer of the nondiverse defendants and presumably knew their citizenship—did not object, and the district court did not learn that joinder would destroy diversity until the plaintiff moved to remand the case to state court. *Id.* at 306-07. The Eighth Circuit determined that the district court had discretion to reverse its prior decision. *Id.* at 307.

This case is similar to *Mayes* and *Bailey*. As in the Rule 15(a) context, the district judge did not have an opportunity to rule on the propriety of joining a nondiverse party. Although the magistrate judge had this opportunity, nothing indicates that he actually conducted the appropriate analysis under § 1447(e). If a district judge

---

[8] (...continued)
*Mayes*, the defendant had not answered the initial complaint when Mayes filed her amended complaint joining a nondiverse party. 198 F.3d at 462 n.11.

may reconsider his *own* order permitting joinder because he did not recognize the jurisdictional implications of his action, then he may certainly reconsider a similar order by a magistrate judge. Under the circumstances of this case, the district judge was permitted to reconsider the magistrate judge's order granting Schur leave to amend her complaint to add nondiverse parties.

We turn from one procedural quagmire to the next: whether the district judge, vested with authority to review the magistrate judge's decision, properly conducted the inquiry.

C. *The District Judge's Joinder Determination Under § 1447(e)*

Having determined that the district judge could review the magistrate judge's order permitting Schur to join Poole and Morr, we now consider whether he correctly found that joinder was inappropriate. We review a district judge's decision to deny joinder for abuse of discretion, *see Perrian*, 958 F.2d at 194, although we review *de novo* a denial of motion to remand, *Price*, 505 F.3d at 628. After examining the district judge's decision, we find three errors that led the court to deny both joinder and remand. First, the district judge over-relied on the fraudulent joinder doctrine; second, he misapplied this doctrine by determining that Schur had no possibility of a claim against Poole and Morr; and third, he found Schur's joinder to be untimely.

### 1. The Fraudulent Joinder Doctrine

In response to Schur's motion to remand, L.A. Weight Loss argued that Schur "fraudulently joined" Poole and Morr, and the district judge agreed. Although we later find that the judge misapplied the doctrine, we first consider the propriety of relying on fraudulent joinder in the post-removal context.

A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). The "fraudulent joinder" doctrine, therefore, permits a district court considering removal "to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes*, 198 F.3d at 461 (citing *Cobb*, 186 F.3d at 677-78).[9]

---

[9] As many courts have noted, the term "fraudulent joinder" is a bit of a misnomer—the doctrine requires neither fraud nor joinder. *See Mayes*, 198 F.3d at 461 n.8; *Cobb*, 186 F.3d at 678; *Poulos*, 959 F.2d at 73; *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (going so far as to adopt the new term "improper joinder," although there is no substantive difference between the two terms). Actual fraud in alleging jurisdictional facts will suffice to invoke the doctrine, but the more typical ground is that a plaintiff brought a claim against a nondiverse defendant "that simply has no chance of

(continued...)

Fraudulent joinder, however, is arguably inapplicable to *post*-removal joinder. Because the doctrine allows a district court to assume initial diversity jurisdiction upon removal from state court despite the presence of nondiverse parties, some courts have held that "it has no effect once the district court actually possesses jurisdiction—including after the case has been removed." *Mayes*, 198 F.3d at 461; *see also Cobb*, 186 F.3d at 677 ("The fraudulent joinder doctrine does not apply to joinders that occur *after* an action is removed."). The primary rationale for this position, as the Fifth Circuit noted in *Cobb*, is that § 1447(e) gives the district court the option to either permit joinder or deny it and remand, meaning that "the defendant thus has an opportunity at the time joinder is considered to prevent joinder by arguing that there is no colorable claim against the party the plaintiff is seeking to join." 186 F.3d at 678. Consequently, under *Cobb*, once a court permits joinder of nondiverse defendants, it loses subject matter jurisdiction and "ha[s] no power even to consider whether fraudulent joinder applied." *Id.* at 678. But this conclusion rests on the premise that the district court had the opportunity to determine, in the first instance, whether the post-removal joinder was appropriate.

---

[9] (...continued)
success, whatever the plaintiff's motives." *Poulos*, 959 F.2d at 73; *see also Smallwood*, 573 F.3d at 573. And "joinder" is also misleading because it is irrelevant whether a nondiverse defendant was actually "joined" or simply named in the original complaint before the state court. *Mayes*, 198 F.3d at 461 n.8.

In *Mayes*, the Fourth Circuit took a slightly different approach to the use of the fraudulent joinder doctrine in post-removal cases. Faced with facts similar to those before us, the court noted that fraudulent joinder is not *directly* applicable after a case has been removed, but it may remain relevant to the district court's analysis when considering the propriety of joinder under § 1447(e).[10] *Mayes*, 198 F.3d at 463. The court therefore determined that "the fraudulent joinder doctrine can be yet another element of the district court's 'flexible, broad discretionary approach' to resolving a post removal question of whether a nondiverse defendant should be joined under Section 1447(e)." *Id.* (quoting *Gum v. Gen. Elec. Co.*, 5 F. Supp. 2d 412, 414 (S.D.W. Va. 1998)). If a defendant can carry the "heavy burden" of proving fraudulent joinder, this would counsel against joinder. *Id.*

We tend to agree with the Fourth Circuit that, although the fraudulent joinder doctrine is not directly applicable to the post-removal context, it can be a relevant factor for determining whether to permit joinder under § 1447(e). This is particularly so where, as here, the district judge did not have an opportunity to analyze the propriety of

---

[10] As we noted above, a court analyzing joinder of a nondiverse party whose presence will destroy diversity should consider (1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if amendment is not allowed; and (4) any other relevant equitable considerations. *See supra* pt.II.A.

joining nondiverse defendants at the time the plaintiff sought to amend the complaint. But the fraudulent joinder doctrine is not *dispositive* of whether joinder is improper; it is simply another tool in the district judge's belt for scrutinizing the plaintiff's motive for joining a nondiverse party. After all, the doctrine is but one means to discern whether the plaintiff sought only to destroy complete diversity.

The district judge's opinion in this case indicates that his approach may have overemphasized the importance of the doctrine. The judge's examination of the first factor of the § 1447(e) analysis—Schur's motive for joining Poole and Morr—was limited only to whether L.A. Weight Loss proved fraudulent joinder. The opinion went on to evaluate the other § 1447(e) factors, however, and perhaps the reliance on fraudulent joinder did not produce reversible error. But we need not make that determination here, because the doctrine was applied incorrectly.

### 2. *The District Court's Application of Fraudulent Joinder*

Fraudulent joinder is difficult to establish—a defendant must demonstrate that, "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos*, 959 F.2d at 73; *see also Gottlieb*, 990 F.2d at 327. Framed a different way, the district court must ask whether there is "any reasonable possibility" that the plaintiff could prevail against the non-diverse defendant. *Poulos*, 959 F.2d at 73. A defendant faces a "heavy burden"

to demonstrate that the joinder is fraudulent, *id.*, and some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Mayes*, 198 F.3d at 464; *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (noting that a Rule 12(b)(6) inquiry "is more searching than that permissible when a party makes a claim of fraudulent joinder"); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006).

In conducting this analysis, a district court must turn to state law to determine whether the plaintiff has any reasonable possibility of success. In this case, the district judge erred in its application of Illinois law by determining that Poole and Morr could not be held individually liable for their conduct.

The district judge's analysis of Schur's motive for joining Poole and Morr stated:

> Under applicable Illinois law, a principal is vicariously liable for the torts of its agent when the agent is acting within the scope of her employment. *Payne v. Witmer*, 129 Ill. 2d 351[, 543 N.E.2d 1304] (Ill. 1989). In this vein, Poole and Morr, as agents of LA Weight Loss, would not be personally liable for any tort they may have performed while working within the scope of their employment. Although this certainly leaves open the possibility that Poole and Morr did not act within the scope of their employment, plaintiff makes no such averment in her Second Amended Complaint. . . .

> As a result, it is reasonably unlikely that an Illinois state court would find Poole and Morr personally liable.

The district court's first sentence is a correct statement of law, but the conclusion in the second sentence is incorrect. The district court may have confused the doctrines of vicarious (derivative) liability and individual (direct) liability.

Vicarious liability imputes an agent's misconduct, performed within the scope of her employment, to the employer. *See Payne*, 543 N.E.2d at 1308; *Lasko v. Meier*, 67 N.E.2d 162, 166 (Ill. 1946) ("A master and servant are each liable for injuries caused solely by the negligent act of the servant in the course of his employment. The servant is liable because he is the active tort-feasor and committed the act which caused the injury.").

Whether the employer is held vicariously liable for the agent's conduct, however, does not affect the agent's independent tort liability. *See Towns v. Yellow Cab Co.*, 382 N.E.2d 1217, 1221 (Ill. 1978) ("[A]ny act of the servant which renders the master liable also renders the servant liable."); *Lasko*, 67 N.E.2d at 166 ("Being the real actor, [the agent] is nonetheless liable because acting for another."); *Fortech, L.L.C. v. R.W. Dunteman Co.*, 852 N.E.2d 451, 456 (Ill. App. Ct. 2006) (noting that an agent's tort liability "is normally unaffected by the fact that he is an agent or servant" (quotations omitted)). As the Illinois Supreme Court said long ago:

> It is not [the agent's] contract with the principal which exposes him to, or protects him from, liabil-

ity to third persons, but his common-law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of agency; nor can its breach be excused by the plea that his principal is chargeable.

*Baird v. Shipman*, 23 N.E. 384, 384 (Ill. 1890) (per curiam); *see also Gateway Erectors Div. of Imoco-Gateway Corp. v. Lutheran Gen. Hosp.*, 430 N.E.2d 20, 21 (Ill. App. Ct. 1981); Romualdo P. Eclaea, Christine M. Gimeo & Thomas Muskus, *Employment* § 202, *in* 17 *Illinois Law and Practice* (2008) ("A person is not absolved of personal liability to a third person on account of his or her negligence or other wrongful act merely because at the time such person was acting as an employee within the scope of the employment."). Thus, an agent can be individually liable even where his employer is *also* vicariously liable.

It was error to conclude that Poole and Morr could not be personally liable simply because L.A. Weight Loss might also be held vicariously liable for their conduct. Nor is the liability of Poole or Morr dependant on whether they were acting within the scope of their employment. Had they been acting outside the scope of their employment, it would have only meant that Schur could not hold *L.A. Weight Loss* vicariously liable for its employees' torts; it meant nothing to Poole's or Morr's individual liability.

This error is somewhat understandable. The district court likely intended to invoke the traditional rule that an agent who breaches a duty owed *solely* to her principal is not independently liable to an injured third party. *See Bovan v.*

*Am. Family Life Ins. Co.*, 897 N.E.2d 288, 295 (Ill. App. Ct. 2008). In essence, this principle is the reverse of vicarious liability—where a tort is alleged directly against the principal for its own misconduct, we may not impute a duty the *principal* owed to a third party to an agent merely acting pursuant to duties it, in turn, owed to the principal. *Id.* at 296; *see also Stein v. Rio Parismina Lodge*, 695 N.E.2d 518, 522 (Ill. App. Ct. 1998) ("While the acts of an agent may be considered to be acts of the principal, acts of the principal are never imputed to the agent." (citation omitted)). But an agent is liable in tort to a third party harmed by the agent's conduct when the agent breaches an independent duty that she owes *to the third party*. *Bovan*, 897 N.E.2d at 295 (quoting Restatement (Third) of Agency § 7.02, at 138 (2006)); *see also Cahill v. E. Benefit Sys., Inc.*, 603 N.E.2d 788, 792 (Ill. App. Ct. 1992); *Bescor, Inc. v. Chi. Title & Trust Co.*, 446 N.E.2d 1209, 1212 (Ill. App. Ct. 1983).

Due to the nature of his analysis, the district judge did not rule on whether Schur alleged that Poole and Morr owed a duty to Hoppe that was independent of the duties they owed to L.A. Weight Loss. At oral argument, L.A. Weight Loss asserted that the court did rule on this issue, albeit "obliquely." But the district judge's discussion refers only to principles of vicarious liability, and we conclude that Schur sufficiently alleged an independent duty.

Whether a duty exists is a question of law. *Widlowski v. Durkee Foods, Div. of SCM Corp*, 562 N.E.2d 967, 968 (Ill. 1990). "It is well settled that every person owes a duty

of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and fore-seeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Id.* To determine whether an individual owed a duty to another, a court considers whether the risk of harm was reasonably foreseeable. *Id.*

We cannot say that Schur had no "reasonable possibility" of success against Poole and Morr individually. L.A. Weight Loss is correct that some allegations against Poole and Morr were not actionable because they did not allege an independent duty. One example is the claim that the defendants "failed to adequately train, supervise, and/or instruct the staff so that the plaintiff would receive adequate warnings about the 'diet supple-ments,'" which invokes duties Poole and Morr owed to L.A. Weight Loss, not to Hoppe.

But Schur alleged that both Poole and Morr had a personal duty "to exercise reasonable care in the supply and provision of counseling services and diet supple-ments," and that both defendants "approved a diet plan that included taking supplements in excess of the direc-tions on the LA Weight Loss labels." This allegation extends beyond a duty owed to L.A. Weight Loss and invokes a duty that Poole and Morr owed directly to Hoppe.

By using their discretion to create a personalized pro-gram requiring the ingestion of an assortment of nutri-tional supplements, Poole and Morr were under a duty to Hoppe to act reasonably in light of foreseeable conse-

quences. *See Gateway Erectors Div.*, 430 N.E.2d at 21 ("'If the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts . . . .'" (quoting *Baird*, 23 N.E.2d at 384)). This is particularly so if Schur can prove her allegations that Poole and Morr instructed Hoppe to exceed L.A. Weight Loss's recommended dosages. *Cf. Hauck v. ConocoPhillips Co.*, No. 06-135, 2006 WL 1596826, at *4 (S.D. Ill. June 6, 2006) (rejecting fraudulent joinder where plaintiff joined a nondiverse safety manager at a refinery because (1) the employer defendant entrusted responsibility for safety at the refinery to him, (2) third persons would rely on him to perform his duty, and (3) failure to perform his duty could result in physical injury); *Katonah v. USAir, Inc.*, 868 F. Supp. 1031, 1035-36 (N.D. Ill. 1994) (rejecting fraudulent joinder where plaintiff joined a nondiverse maintenance employee who purportedly failed to investigate an errant noise in a plane that subsequently crashed).

The aforementioned analytical problems led the district judge to conclude that Schur had no possibility of succeeding against Poole and Morr. The outcome of this analysis, then, was that she must have had no motive for joining them other than to destroy diversity.

### 3. Timeliness of Schur's Motion to Amend

There is one final problem. In addition to determining that Schur could not succeed against Poole and Morr, the

district judge also found that the timing of Schur's motion to amend weighed against granting her motion. Specifically, the judge stated that Schur knew the identity of Poole and Morr from the beginning of discovery in August 2005, yet she waited almost a year before seeking to join them in August 2006. But this conclusion ignores that Schur learned of the defendants' role in the events leading to Hoppe's death only after obtaining L.A. Weight Loss's responses to discovery requests on June 8, 2006. Even then, Schur objected to the discovery's completeness, continued to question L.A. Weight Loss's counsel regarding when she would receive more complete responses, and ultimately filed a motion on June 27 to obtain information "so that all proper parties can be identified" and to schedule depositions of Poole and Morr, among others. And, of course, Schur was unable to ask Hoppe who directed or administered her weight loss program. Schur sought to amend her complaint to join the new defendants within two months of learning of their roles, and the district judge mistakenly relied on the one-year delay in his § 1447(e) joinder analysis.

Although an extensive delay between removal and a motion to amend typically weighs against permitting joinder, under the facts of this case, the timing of Schur's motion to amend actually *supports* her position. Had Schur sought to join Morr and Poole immediately after removal, but without additional discovery providing a legitimate reason for doing so, it would have suggested that the joinder's only purpose was to destroy jurisdiction. *See, e.g.*, *Mayes*, 198 F.3d at 463 (noting that it is

especially important to scrutinize a plaintiff's attempt to add a nondiverse defendant when it comes "immediately after removal but before any additional discovery has taken place"). In this case, the record shows that Schur sought leave to join Morr and Poole as defendants only after learning of their roles in Hoppe's death. Her motion was timely.

*D.  Summary of Analysis*

We believe that the district court (1) overemphasized the fraudulent joinder doctrine, which is not directly applicable to post-removal joinder; (2) improperly applied that doctrine by errantly concluding that Illinois law did not support at least some of Schur's claims against Poole and Morr; and (3) wrongly concluded that Schur's motion was untimely. We find that, as a result, the district judge improperly struck Schur's second amended complaint and denied remand.

Our review of the record indicates that the district court should have remanded Schur's case to Illinois state court. Application of the fraudulent joinder doctrine does not help us determine, in this case, whether Schur sought to join Morr and Poole solely to defeat diversity jurisdiction, and we see no other evidence suggesting that she did so. Schur was also not dilatory in seeking joinder. As for balancing the equities, we recognize L.A. Weight Loss's interest in avoiding the potential biases of local courts, *see Poulos*, 959 F.2d at 71, but we must also consider Schur's interest in avoiding the cost and inconvenience of parallel lawsuits in state and federal court. Signifi-

cantly, Schur would present her case in federal court without also litigating her claims against the two employees who actually provided her late sister with the supplements that purportedly killed her. The allegations in the complaint extend beyond L.A. Weight Loss's mere failure to study, research, or warn of the supplements' effects and dangers; Schur included allegations related to Hoppe's individual program and dosages in excess of L.A. Weight Loss's directives.

Because we have determined that the district court erred by denying remand, it had no jurisdiction to reach the merits of Schur's lawsuit, and neither do we.

### III. CONCLUSION

Because the district court lacked jurisdiction to determine the merits of the dispute, we VACATE the district court's order striking Schur's second amended complaint; we also VACATE the district court's order granting summary judgment against Schur; and we REMAND to the district court with instructions to REMAND this matter to the state court from which removal was granted.